UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY MANUELL, o/b/o
CHRISTOPHER MANUELL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:11-cv-264
Barrett, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Mary Manuell brings this action on behalf of her late husband, Christopher Manuell,[1] pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on Manuell's Statement of Errors (Doc. 25) and the Commissioner's response in opposition. (Doc. 30).

**I. Procedural Background**

Plaintiff filed an application for DIB in February 2006, alleging disability since January 1, 2000, due to spinal fusion in his lower back, arthritis, ulcers, and migraine headaches.[2] Plaintiff's application was denied initially and upon reconsideration. Plaintiff passed away prior to the Commissioner's decision on reconsideration. Manuell, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Samuel A. Rodner. Manuell and a vocational expert (VE) appeared and testified at the ALJ hearing. On March 4, 2009, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Manuell's

---

[1] For purposes of clarity, the Court will refer to Mary Manuell as "Manuell" and Christopher Manuell as "plaintiff" throughout this opinion.

[2] Manuell amended plaintiff's alleged disability onset date to September 1, 2004 at the administrative hearing. (Tr. 1003).

request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on September 30, 2007.
>
> 2. The [plaintiff] did not engage in substantial gainful activity and did not have any unsuccessful work attempts during the period from his amended alleged onset date of September 1, 2004 through the date of his death on May 27, 2006 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date of his death, the [plaintiff] had the following severe impairments: sacroilliitis (sic), lumbar spondylosis, lumbar facet arthropathy, chronic back pain status-post T11-12 fusion in 1977 and removal of Harrington rods in 1979, and morbid obesity (20 CFR 404.1520(c)).
>
> 4. Through the date of death, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that from September 1, 2004 through the date of death on May 27, 2006, the [plaintiff] had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).
>
> 6. Through the date of death, the [plaintiff] was capable of performing his past relevant work as an airline dispatcher. This work did not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity. (20 CFR 404.1565).

> 7. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from September 1, 2004, the amended alleged onset date, through May 27, 2006, the date of his death (20 CFR 404.1520(f)).

(Tr. 29-34).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, Manuell argues that: (1) the ALJ erred by improperly evaluating plaintiff's pain as attested to by Manuell; (2) the ALJ erred in determining that plaintiff's depression was not a severe impairment; (3) the ALJ erred by not seeking testimony from a medical expert; and (4) the ALJ erred by violating HALLEX provisions requiring documentation of off-the-record discussions.

1. <u>The ALJ did not err in discounting Manuell's credibility as it related to plaintiff's pain</u>.

Manuell contends that the ALJ did not follow the appropriate standard for assessing plaintiff's statements about his back pain as set forth in *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). Specifically, Manuell argues that the ALJ erred by failing to consider plaintiff's statements of pain, noting that none of plaintiff's complaints were discussed in the ALJ's decision, and by discounting Manuell's testimony about plaintiff's pain. (Doc. 25 at 12). Manuell asserts that plaintiff's severe back pain is supported by objective and clinical findings in the record, identifying that plaintiff has osteoarthritis, spondylosis, radiculopathy, spinal stenosis, and failed back syndrome. *Id.* at 9-10. Given plaintiff's impairments and history of treatment and medication for back pain, Manuell argues that it is reasonable to believe plaintiff experienced the level of pain and associated limitations to which Manuell testified at the ALJ hearing.

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). In order to find a claimant disabled on the basis of pain alone, the ALJ must first determine whether there is objective

medical evidence of an underlying medical condition. *Duncan*, 801 F.2d at 852-53. If there is, the ALJ must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged; or (2) whether the objectively established underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.* at 853. Although the plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *id.*, statements about his pain or other symptoms are not sufficient to prove his disability. *Id.* at 852 (citing 20 C.F.R. § 404.1529). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." 20 C.F.R. § 404.1529(a).

In addition to the objective medical evidence, the ALJ must consider other evidence of pain, such as evidence of plaintiff's daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be

explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Here, the Court must defer to the ALJ's decision to discount plaintiff's complaints of disabling pain as attested to by Manuell because substantial evidence supports a finding that neither prong of the two-part *Duncan* test is met with respect to plaintiff's back pain from the alleged onset date, September 1, 2004, to the date of plaintiff's death, May 27, 2006.

First, substantial evidence supports the ALJ's finding that the objective evidence of record does not establish the severity of plaintiff's pain as stated by Manuell. The record includes objective medical evidence of the following underlying medical conditions: possible spinal stenosis at L2 and mild to moderate arthropathy at L4-L5 and L5-S1 (Tr. 340-41); evidence of fusion of T10 and T11 (Tr. 259, 339); sacroiliitis, lumbago, lumbar spondylosis, and lumbar radiculopathy bilaterally (Tr. 235); a history of migraine headaches (Tr. 267, 725); and post laminectomy syndrome. (Tr. 828). Plaintiff's pain treatment regimens included lumbar epidural steroid injections and facet joint injections (Tr. 149, 169, 171-73) and a history of pain medication treatment including Toradol, Methadone, steroids, Duragesic patches, codeine, Tramadol, Methocarbamol, and Gabapentin. (Tr. 348-51, 746, 751-72, 814, 843). Nevertheless, there is also substantial evidence that plaintiff's pain during the pertinent time period was not as severe as alleged by Manuell. *See* Tr. 456 (on August 16, 2006, plaintiff reported only bi-monthly migraine headaches); Tr. 1170-72, 1215, 1217, 1224-25, 1227, 1229, 1231 (at pain clinic and doctor visits in 2005 and 2006, plaintiff reported lower back pain no higher than 3/10 and 4/10, and that he was feeling well with his current medications); Tr. 1215, 1217, 1219-20 (while plaintiff reported pain at 7/10 and 6/10 in March 2005 and April 2006, respectively, in

May 2006 plaintiff stated his pain medications were working well, reporting pain at 4/10). The ALJ cited to this evidence in support of his determination that Manuell's testimony about the severity of plaintiff's back and headache pain was inconsistent with the objective evidence of record as well as plaintiff's own subjective reports. (Tr. 33)[3]. The above-cited treatment notes support the ALJ's findings. Consequently, the Court finds that his decision is substantially supported in this regard.

Second, substantial evidence supports the ALJ's conclusion that during the relevant time period (September 1, 2004 through May 27, 2006) plaintiff's pain was well-controlled by medication. (Tr. 30). As discussed above and noted by the ALJ, aside from reports of increased pain in March 2005 and April 2006 (Tr. 1217, 1219-20), the evidence demonstrates that plaintiff's pain medication was effective in keeping his pain at 3/10 to 4/10. (Tr. 1170-72, 1215, 1217, 1224-25, 1227, 1229, 1231). Treatment notes during the relevant time period from plaintiff's treating pain specialists, Suresh Gupta, M.D., and Cara Perez, M.D., reveal that plaintiff was doing well, tolerating and responding well to his medication, not experiencing new types of pain, and not experiencing debilitating pain or headaches (Tr. 1140, 1142, 1144-45, 1148, 1150-51, 1155, 1157, 1159, 1161, 1166-68).[4] Notes from plaintiff's pain clinic similarly demonstrate that plaintiff's pain was controlled by his medication and he reported no new problems. (Tr. 1170-72). Further, while there is no opinion from a treating doctor about plaintiff's functional abilities during this period, non-examining state agency physician Dimitri Teague, M.D., completed a physical residual functional capacity (RFC) assessment in June 2006 and opined that plaintiff was capable of performing a full range of light work. (Tr. 1068-75).

---

[3] Manuell testified that plaintiff's pain was constant and never lower than 5/10; that plaintiff had two to three migraines a month; and that plaintiff's pain radiated down his leg causing him to limp. (Tr. 1021-22, 1024-27).

[4] Insofar as Manuell argues the ALJ failed to consider plaintiff's statements of pain, this argument is not well-taken in light of the ALJ's direct references to this evidence. See Tr. 30, 33.

Dr. Teague noted that the severity of pain reported by plaintiff on his symptoms report, 10/10 five days a week, was inconsistent with the above evidence. (Tr. 1073).

The ALJ considered the relevant evidence of record and reasonably determined that it did not support a finding that plaintiff's pain precluded him from performing light work. The Court "must defer to an agency's decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'" *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (quoting *Key v. Callahan*, 109 F.3d 270, 273) (6th Cir. 1997)). As there is substantial evidence supporting the ALJ's conclusion, the Court must defer to it.

Lastly, to the extent Manuell contends the ALJ erred in finding her testimony was not fully credible, this argument is not well-taken. As discussed above, Manuell's testimony regarding plaintiff's level of pain and severity and frequency of migraine headaches is contradicted by the record evidence, including plaintiff's own subjective reports to his doctors. Contrary to Manuell's argument, the ALJ specifically noted these discrepancies in finding that Manuell's testimony was not well-supported and, thus, not fully credible. (Tr. 33). In addition, while Manuell testified that plaintiff had difficulty walking due to radiating pain, the ALJ noted there was no evidence aside from Manuell's testimony documenting the alleged limp and no evidence that plaintiff used an ambulatory aid. *Id.* In light of the evidence considered by the ALJ, the inconsistencies between Manuell's testimony and other record evidence, and the deference due the ALJ in making credibility determinations, the undersigned finds that the ALJ's credibility finding is substantially supported.

2. <u>The ALJ's finding that plaintiff's depression was not a severe impairment is supported by substantial evidence.</u>

Manuell's second assignment of error is that the ALJ erred by finding that plaintiff's

depression was not a severe impairment. The ALJ's decision provides:

> Depression is not found to be a severe impairment, and there is no substantial evidence that the [plaintiff] committed suicide or attempted suicide because of depression or any other mental disorder. At most, depression resulted in only mild restriction of the [plaintiff's] activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. There were no documented episodes of mental decompensation on the part of the claimant.

(Tr. 31). Manuell argues that the ALJ's conclusion "that plaintiff's depression causes at least mild limitations in three areas of functioning is sufficient to establish severity under the *de minimis* hurdle." (Doc. 25 at 15). Manuell further contends that treatment notes from Simran Kaur Sehbi, M.D., plaintiff's treating psychiatrist, and Emanuel Papadakis, Ph.D., plaintiff's three-time examining psychologist, support a finding that plaintiff's depression was severe. For the following reasons, the undersigned disagrees.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the context of mental impairments, basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervisors; and deal with changes in the work setting. 20 C.F.R. § 404.1521(b).

The plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which the plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and

work experience." *Farris v. Sec'y of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a *"de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers,* 486 F.3d at 243 n.2.

Manuell cites to Dr. Sehbi's treatment notes and to Dr. Papadakis' opinions in support of the argument that the ALJ erroneously determined that plaintiff's depression was not a severe impairment. While Manuell does not identify any specific records from Dr. Sehbi, she contends that Dr. Papadakis' opinion that plaintiff was "clearly unemployable" and the assignment of a Global Assessment of Functioning (GAF)[5] score of 45 demonstrate that plaintiff's depression was a severe impairment. (Doc. 25 at 16).[6] Despite the record evidence demonstrating that, at some point, plaintiff's depression was likely severe, Manuell has identified no evidence from which the Court can conclude that the ALJ erred by finding that plaintiff's depression was not severe during the alleged disability period.

First, with respect to Dr. Papadakis, there are no treatment notes or diagnoses from this provider for the alleged period of disability, September 1, 2004, through May 27, 2006. The record includes evidence that Dr. Papadakis treated plaintiff on three occasions, on May 4 and

---

[5] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 31 to 40 as having impairment in reality testing or communication or having a major impairment in several social and occupational areas, such as being unable to work. *Id.* at 32. Individuals with scores of 41 to 50 are characterized as having "serious symptoms . . . or serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job) . . . ." *Id.* Individuals with scores of 61-70 are described as having "some mild symptoms (*e.g.,* depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well . . . ." *Id.*

[6] The Statement of Errors includes no citation to any medical record in support of the assertion that Dr. Papadakis assigned a GAF score of 45. However, upon review of the voluminous record, the Court finds that Dr. Papadakis assigned plaintiff a GAF score of 40 on November 21, 2002, well before the alleged disability onset date. *See* Tr. 549.

22, 2000, and November 21, 2002, pursuant to a referral from Dr. Sehbi. (Tr. 549-50, 682, 689-92). Dr. Papadakis initially determined in May 2000 that plaintiff had mild depressive symptoms, was histrionic and had a tendency to exaggerate his symptoms, and diagnosed him with hypochondriasis. (Tr. 682, 689-92). In 2002, Dr. Papadakis opined that plaintiff's stress level made him "completely unemployable" and plaintiff was assigned the GAF of 40. (Tr. 549-50). These records provide no guidance as to plaintiff's mental functioning during the relevant 2004 to 2006 time period and, as explained below, they are contradicted by Dr. Sehbi's more contemporary findings. As these records are not relevant to the ALJ's determination as to whether plaintiff suffered from the severe impairment of depression following the alleged disability onset date, the undersigned finds no error in the ALJ's refusal to adopt Dr. Papadakis' opinion.

Second, to the extent that Manuell argues that plaintiff's GAF score of 40 supports a finding that plaintiff's depression was a severe impairment, this argument is not persuasive. Not only did the score pre-date the alleged disability onset date by two years, it is contradicted by later records demonstrating that plaintiff reported no depression. (Tr. 1170-73, 1217, 1219-20, 1225, 1227, 1229, 1231). Moreover, GAF scores are not determinative of the severity of an individual's impairment and ALJs are not required to rely on them. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). *See also Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Kornecky v. Comm'r of Soc. Sec.*, No 04-2171, 2006 WL 305648, at *13-14 (6th Cir. Feb. 9, 2006). Manuell's argument also ignores that in October 2005, Dr. Sehbi assigned plaintiff a GAF score 65, indicating that plaintiff had only some mild depressive symptoms. (Tr. 471). Accordingly, the ALJ committed no error by not relying on Dr. Papadakis' assigned GAF score in finding that plaintiff's depression was not severe.

Lastly, Manuell's reliance on Dr. Papadakis' opinion that plaintiff was unemployable is misplaced. An ALJ is not required to accept a psychologist's conclusion that his patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a psychologist's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d)(3). *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner" and not plaintiff's psychologist).

The Court further finds that Dr. Sehbi's treatment notes fail to support Manuell's assertion that plaintiff's depression was severe during the relevant period. The record includes Dr. Sehbi's treatment notes from 2000 to 2006. While some notes from 2000 and 2003 arguably support Manuell's position, *see* Tr. 694 (in April 2000, Dr. Sehbi diagnosed plaintiff with major depression, moderate) and Tr. 546 (January 17, 2003 notes include plaintiff's reports of increased depression and a diagnosis of dysthymic disorder), these notes fall outside of the relevant time period. More importantly, they are inconsistent with Dr. Sehbi's later findings. Notably, just a few months later, in May 2003, plaintiff reported that his depression had improved, he had been enjoying spending time with his wife, and he was thinking about looking for a job after his daughter left the house for college. (Tr. 531). In September 2003, plaintiff reported that he visited with family in Indiana, worked with his wife doing yard work and house painting, no longer felt depressed, and no longer felt the need to see Dr. Papadakis for therapy. (Tr. 522-23). Dr. Sehbi's treatment notes from June 2004 are similar: plaintiff reported depression at 0/10 with occasional depressed days where his depression reached 8/10, but that he felt fine the following day. (Tr. 496-98). Notes from 2005 include plaintiff's reports that he was less stressed after his daughter left for college and had little motivation or energy, but was

traveling, swimming, walking, and spending time with his wife. (Tr. 469-71, 476). On October 13, 2005, Dr. Sehbi assigned plaintiff a GAF score of 65, noting that he had a normal mental status examination with euthymic mood, and reported good sleep and a fair appetite. (Tr. 469-71). The record also includes a typed note from July 2006, following plaintiff's death, from a May 5, 2006 visit in which plaintiff continued to report that he had no depression and Dr. Sehbi observed that plaintiff's mood was euthymic. (Tr. 460-61).

These notes from Dr. Sehbi support the ALJ's determination that plaintiff's depression was not a severe impairment during the relevant time period of September 2004 through May 2006. Manuell has failed to cite to any evidence that plaintiff had any limitations whatsoever resulting from his depression that would support a contrary finding. Given plaintiff's repeated reports that he was not depressed, in conjunction with Dr. Sehbi's observations that plaintiff was functioning well and the lack of any evidence that plaintiff was functionally limited by his depression, the ALJ's finding that depression was not a severe impairment is supported by substantial evidence.

For these reasons, Manuell's second assignment of error should be overruled.

3. <u>The ALJ did not err by declining to elicit testimony from a medical expert</u>.

For the third assignment of error, Manuell argues the ALJ erred by "not eliciting medical expert testimony to develop the record." (Doc. 25 at 16). Manuell contends that because there is an unresolved inconsistency in the state reviewing physicians' opinions, the ALJ was required under Social Security Ruling 96-7p to elicit testimony from a medical expert before determining plaintiff's RFC. Manuell also contends the ALJ should have sought medical expert testimony prior to determining that plaintiff's depression and "other conditions" were not severe impairments. *Id*. at 16-17. By making these determinations without a medical expert's opinion,

Manuell asserts the ALJ created his own medical opinion and, consequently, his decision is not substantially supported.

The ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing . . . ." *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1051 (6th Cir. 1983). The ALJ has discretion in determining whether or not to elicit testimony from a medical expert. *See* 20 C.F.R. § 404.1527(e)(2)(iii) ("[ALJs] *may* also ask for and consider opinions from medical experts . . . .") (emphasis added). The regulation providing for medical expert testimony is permissive, not mandatory. *See Davis v. Chater*, 104 F.3d 361, No. 95-2235 (6th Cir. Dec. 19, 1996) (Table) (finding that 20 C.F.R. § 404.1527 "specifically give[s] the ALJ discretion to decide whether to call a medical expert [and] the ALJ's failure to call a medical expert . . . does not prevent this court from finding that substantial evidence supports the ALJ's decision . . . .").

The medical record in this matter is voluminous, containing nearly 1,000 pages of treatment records spanning nearly a decade. The ALJ based his decision on this extensive medical history, plaintiff's reports to the Commissioner regarding his condition, Manuell's testimony, and reports from various doctors regarding plaintiff's conditions. While there is a discrepancy between the two state agency reviewing physician opinions as to plaintiff's RFC,[7] the ALJ gave plaintiff the benefit of the doubt and adopted Dr. Teague's assessment that plaintiff's severe impairments limited him to light work. "[G]iven the breadth and depth of the evidence in the record, and this Court's deference to the ALJ in deciding whether the record is fully developed, [the undersigned] find[s] the ALJ did not err in failing to call a medical expert." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009).

---

[7]State agency reviewing physician Dimitri Teague, M.D., opined in June 2006 that plaintiff had retained the RFC to do light work (Tr. 1068-75). In November 2006, state agency reviewing physician Cindi Hill, M.D., opined there was insufficient evidence of any severe impairments and declined to affirm Dr. Teague's RFC assessment. (Tr. 1061). Dr. Hill's opinion was affirmed in June 2008 by state agency reviewing physician W. Jerry McCloud, M.D. (Tr. 1061).

For these reasons, Manuell's third assignment of error should be overruled.

4. <u>The ALJ did not have a duty to further develop the record regarding amendment of the alleged disability onset date.</u>

In her final assignment of error, Manuell argues the ALJ erred by failing to develop and "properly document off-the-record discussions," referring to the decision to amend the alleged disability onset date at the ALJ hearing. (Doc. 25 at 17-18) (citing Tr. 1004). The hearing transcript provides in relevant part:

> ALJ: I have an alleged onset date of January 1, 2000. However, Mr. Olden,[8] I believe the earliest [plaintiff] could receive benefits would be about September 1, 2004?
>
> ATTY [for plaintiff]: Yes, and I've discussed that with Mary Manuell.
>
> ALJ: Any objection changing, you know, some of her (INAUDIBLE).
>
> ATTY: I would certainly recommend it. You understood what we talked about --.
>
> [Manuell]: Yes, sir.
>
> ATTY: -- in terms of the payment. Yeah. Yeah, that's fine.

(Tr. 1003). Manuell asserts that this exchange demonstrates that she was not fully advised about the consequences of her decision to amend plaintiff's alleged disability onset date when she consented to the amendment, arguing that she felt pressure to make the change and did so based on incorrect information. Manuell appears to contend that this "off-the-record" discussion should have been placed on the record pursuant to the ALJ's duty to compile a complete record under 20 C.F.R. § 404.951. Manuell's argument is not well-taken.

Section 404.951 of the Social Security regulations provides that the ALJ "shall make a complete record of the hearing proceedings." 20 C.F.R. § 404.951. Further, "[i]f a question arises during the course of a hearing that is not relevant to the issues in the [plaintiff's] case" the

---

[8] Stephen Olden was the attorney representing plaintiff and Manuell at the ALJ hearing. (Tr. 1001).

ALJ may discuss and resolve these issues off-the record but "must summarize on the record the content and conclusion of any off-the-record discussion." HALLEX 1-2-6-40 (September 2, 2005).[9]

The undersigned finds that the ALJ properly adhered to his duty under the applicable rules and regulations. Manuell's argument that the ALJ failed "to properly document off-the-record discussions" presupposes facts that are not in the record currently before the Court – chiefly, that any off-the-record discussion occurred at the ALJ hearing. The above-cited testimony demonstrates only that the ALJ spoke with Manuell's hearing attorney about amending plaintiff's disability onset date and that Manuell consented to the amendment. This entire exchange occurred on the record in accordance with 20 C.F.R. § 404.951 and HALLEX 1-2-6-40. It thus appears that Manuell's current counsel has either misinterpreted the ALJ hearing transcript or is referencing some off-the-record discussion that is not reflected in the record. Insofar as Manuell is asserting the ALJ spoke with her off-the-record, there is no evidence of any such discussion before the Court. Consequently, the undersigned finds that the ALJ complied with his duties to record and develop off-the-record discussions and recommends that Manuell's fourth assignment of error be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 3/27/13

Karen L. Litkovitz
United States Magistrate Judge

---

[9] The HALLEX is a procedural manual utilized by the Commissioner "that sets forth safeguards and procedures for these administrative proceedings." *Robinson v. Barnhart,* 124 F. App'x 405, 410 (6th Cir. 2005).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY MANUELL, o/b/o
CHRISTOPHER MANUELL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:11-cv-264
Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).